UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JOHNNA EHRLICH,

    Plaintiff,

CASE NO.:  2:16-cv-14534

-vs-

COMENITY LLC, d/b/a COMENITY BANK,

    Defendant.
_____/

## COMPLAINT

1.    COMENITY BANK "robodialed" Ms. Ehrlich an outrageous 2,000 times concerning her grandmother's alleged debt.  Ms. Ehrlich does not owe Comenity any money and never did. This abusive robodialing campaign continued despite Plaintiff begging the Defendant to stop calling.  Defendant's conduct is in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq*. ("FCCPA") and the Fair Debt Collection Practice Act ("FDCPA").  Comenity intentionally breaks these laws and gets away with it, so they continue because they make so much money doing it.

## INTRODUCTION

2.    "Robocalls" are the #1 consumer complaint in America today.

3.    "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015). An average of 200,000 complaints are made to the Federal Trade Commission ("FTC") every month about robocalls. Hearing Before the Senate Comm. On

Commerce, Sci., and Transp.'s Subcomm. On Consumer Prot., Prod. Safety, and Ins. (July 10, 2013)(hereafter "Senate Hearing")(statement of Lois Greisman, Associate Director, Division of Marketing Practices, FTC).

4. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014, at 5 (Nov. 2014). Since this report, the number of complaints has increased dramatically. Robocalls are very inexpensive to make. As was noted in the Senate Hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

5. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

6. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another

option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

9. Robocalls cause real emotional and money damages for individuals and their families.

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11. The alleged violations described in the Complaint occurred in Port St. Lucie, FL.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person.

12. Plaintiff is a citizen of the United States.

13. Plaintiff resides in Port St. Lucie, Florida.

14. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8) and 15 U.S.C. § 1692(a)(3).

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.,* 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a corporation.

18. Defendant is a corporation that conducts business in the state of Florida.

19. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

20. Defendant collects debt for other entities besides their own.

21. The debt at issue in the case was not in default at the time Defendant was collecting on it.

22. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6) and U.S.C. § 1692(a)(5).

23. Defendant made a call to the Plaintiff's cellular telephone, (772) 209-2241.

24. Plaintiff is the regular user and carrier of the cellular telephone number at issue (772) 209-2241.

25. Defendant attempted to collect a debt from the Plaintiff.

26. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such a frequency as can be reasonably expected to harass.

27. Defendant made at least one call to the Plaintiff using an automatic telephone dialing system (ATDS), as defined in the TCPA, 47 U.S.C. § 227(a)(1).

28. Each call Defendant made to the Plaintiff was made using an ATDS.

29. Defendant made at least one call to Plaintiff's cellular telephone using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227 (b)(1)(A).

30. Each call Defendant made to Plaintiff's cellular telephone was with an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227 (b)(1)(A).

31. Defendant has agreed and/or stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

32. Defendant's counsel has agreed and/or stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

33. Defendant's counsel's law firm has agreed and/or stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

34. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

35. Plaintiff never provided her aforementioned cellular telephone number to the Defendant.

36. In or about April of 2015, Plaintiff received a telephone call to her aforementioned cellular telephone number from Defendant seeking to recover a debt. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (913) 312-5158, (720) 456-3680, (913) 312-0548, (913) 312-3215, (614) 212-5289, (614) 212-5291, (614) 212-5292, (303) 255-5351, (614) 212-5289, (614) 212-5288, (614) 754-4058 and (913) 312-1013.

37. Immediately upon receipt of the calls, in or about April of 2015, Plaintiff answered a call from Defendant and inquired, "How did you get my number?" The Plaintiff also demanded that Defendant cease placing calls to her aforementioned cellular telephone number during this conversation.

38. In or about April of 2015, during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Defendant may

have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

39. Each subsequent call Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

40. The Plaintiff has repeatedly explained to the Defendant's agents/representatives that the aforementioned phone number is hers and does not belong to her grandmother.

41. Plaintiff later answered another call from the Defendant, and said to the agent/representative, "You guys keep calling me and I've asked you not to call."

42. Plaintiff later answered yet another call from the Defendant, and explained to the agent/representative, "You keep calling me from different numbers, and I told you last time we talked to stop calling."

43. Each of Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

44. Defendant has recorded at least one conversation with the Plaintiff.

45. Defendant has recorded numerous conversations with the Plaintiff.

46. Despite actual knowledge of their wrongdoing, and that they did not have Plaintiff's consent, the Defendant continued its barrage of phone calls to Plaintiff's aforementioned cellular telephone number in an attempt to collect a debt.

47. Defendant made at least one call to (772) 209-2241 using an "automatic telephone dialing system" (ATDS).

48. Defendant made at least five hundred (500) calls to (772) 209-2241 using an ATDS.

49.   Defendant made at least one thousand (1,000) calls to (772) 209-2241 using an ATDS.

50.   Defendant made at least two thousand (2,000) calls to (772) 209-2241 using an ATDS.

51.   Each call the Defendant made to the Plaintiff in the last four years was made using an ATDS.

52.   From about April of 2015 through the filing of this Complaint, Defendant placed approximately two thousand (2,000) automated calls to Plaintiff's aforementioned cellular telephone (or as will be established after a thorough review of Defendant's records), despite the Plaintiff revoking any consent Defendant may have mistakenly believed it had to place calls to her aforementioned cellular telephone number.

53.   By effectuating these unlawful phone calls, Defendant has caused the Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

54.   Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

55.   Defendant's phone calls harmed Plaintiff by wasting her time.

56.   Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

57. Defendant's corporate policy and procedures is structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

58. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

59. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

60. 40. The Defendant has been sued civilly in Federal Court 147 times in the last three (3) years (Attached hereto as Exhibit "A").

61. 41. In the last 3 years, the Defendant has had 1,580 complaints reported to the Better Business Bureau (BBB), of which 1,136 of those complaints are classified as being related to "Billing/Collection Issues". See http://www.bbb.org/centralohio/business-reviews/credit-cards-and-plans/comenity-bank-in-columbus-oh-6558/complaints/.

62. Plaintiff expressly revoked any consent Defendants may have mistakenly believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendants' placement of the calls.

63. Defendant violated the TCPA with respect to the Plaintiff.

64. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
**(Violation of the TCPA)**

65. Plaintiff incorporates paragraphs one (1) through sixty-four (64).

66. Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

67. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

68. Plaintiff incorporates Paragraphs one (1) through sixty-four (64).

69. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

70. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

71. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

72. Defendant has violated Florida Statute §559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

73. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

### COUNT III
### (Violation of the FDCPA)

74. Plaintiff incorporates Paragraphs one (1) through sixty-four (64).

75. At all times relevant to this action, Defendant is subject to and must abide by 15 U.S.C. § 1692 et seq.

76. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

77. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

78. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/William Peerce Howard*
William Peerce Howard, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esquire
Florida Bar No. 98228
Amanda@TheConsumerProtectionFirm.com

                                                                _____  
                                                                The Consumer Protection Firm, PLLC  
                                                                210 A South MacDill Avenue  
                                                                Tampa, FL 33609  
                                                                Tele:  (813) 500-1500  
                                                                Fax:  (813) 435-2369  
                                                                Attorneys for Plaintiff